UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21425-Civ-COOKE/TORRES

CLARA GILBERT,

    Plaintiff,

v.

LIBERTY BANKERS LIFE
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Clara Gilbert ("Plaintiff" or "Ms. Gilbert") brings this action for breach of contract against Defendant Liberty Bankers Life Insurance Company ("Defendant" or "Liberty") asserting that Defendant breached its contract with Plaintiff by failing to pay death benefits under a life insurance policy. Defendant filed a Motion for Summary Judgment (ECF No. 21) and corresponding Statement of Material Facts in Support of its Motion for Summary Judgment (ECF No. 22) arguing that Plaintiff cannot prevail, as a matter of law, on her contract claim under the policy. Plaintiff filed a Response to Summary Judgment Motion (ECF No. 26) and corresponding Statement of Material Facts in Opposition to Summary Judgment Motion (ECF No. 27), to which Defendant filed its Reply to Plaintiff's Response to Motion for Summary Judgment (ECF No. 32). After reviewing Defendant's Motion for Summary Judgment, the Response and Reply thereto, the parties' Statements of Material Facts, the record, and relevant legal authorities, Defendant's Motion for Summary Judgment is denied.

### I.    FACTUAL BACKGROUND

Clara Gilbert was diagnosed with HIV sometime after May 21, 1987 but before December 12, 1988. Def.'s Stmt. Material Facts ¶ 2, ECF No. 22.[1] She gave birth to her son, John Geter III, on December 12, 1988. *Id.* at ¶ 1. John Geter III was born HIV

---

[1] Defendant's statements of material facts are deemed admitted to the extent they are supported by evidence in the record and not specifically disputed by Plaintiff in an opposing statement of facts. S.D. Fla. L.R. 56.1(b); *see also Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-46 (S.D. Fla. 2009).

positive, and shortly after his birth, doctors informed Ms. Gilbert that he had been born with AIDS.  *Id.* at ¶¶ 3, 4.

On September 17, 2011, insurance salesman Jim Sanphasiri arrived at Ms. Gilbert's house, along with fellow insurance salesmen Joseph Christopher and Eddie Palacios, to sell Ms. Gilbert life insurance policies for her son and daughter.  Pl.'s Stmt. Additional Material Facts ¶ 87, ECF No. 27.  Ms. Gilbert executed, with the assistance of Mr. Sanphasiri, an application for life insurance through Liberty for her son John Geter III.  Def.'s Stmt. Material Facts ¶ 12; Pl.'s Stmt. Material Facts in Opposition ¶ 12.  John Geter III was present at the time Ms. Gilbert applied for his life insurance policy, and he signed the application.  Def.'s Stmt. Material Facts ¶ 15.  Question 28 of the life insurance application form asked: "Has the Proposed Insured been tested positive for exposure to the HIV infection or been diagnosed as having ARC or AIDS caused by the HIV infection or other sickness or condition derived from such infection?" Ex. A-5, ECF No. 23.  Question 28 was initially answered "yes," but Mr. Sanphasiri changed that response to "no" and initialed the change.  *See id.*

Ms. Gilbert and Liberty dispute the circumstances surrounding her answer to Question 28 and the subsequent change in answer.  Liberty contends that Mr. Sanphasiri completed Question 28 in the presence of Ms. Gilbert and John Geter III, and that Ms. Gilbert initially stated that John Geter III did have HIV, prompting Mr. Sanphasiri to check the "yes" box, but that Ms. Gilbert then advised Mr. Sanphasiri that John Geter III was born with the HIV virus but had tested negative for the past several years, so the answer should be changed to "no."  Ex. A-6, ECF No. 23.  Mr. Sanphasiri concurred, changed the answer to "no," and initialed the change.  *Id.*  Ms. Gilbert maintains that she completed Question 28 and answered it "yes."  Ex. A-24; A-9, ECF No. 23.  However, Mr. Christopher told Mr. Sanphasiri to change the answer to Question 28 to "no" and initial the change, which Mr. Sanphasiri did.  *Id.*  Ms. Gilbert does not know why Mr. Christopher advised Mr. Sanphasiri to change the "yes" to a "no."  *Id.*

On September 26, 2011, Liberty advised Ms. Gilbert that John Geter III's policy had not been issued as originally applied for and required the execution of an "Amendment to Application" confirming that the answer to Question 28 was in fact "no."  Ex. A-7, ECF No. 23.  This amendment bears the signature of both Ms. Gilbert and John Geter III,

although Ms. Gilbert does not remember signing the Amendment and cannot confirm that the signatures are hers and her son's. Gilbert Dep. 89:11-90:22, ECF No. 23. However, both Mr. Sanphasiri and Mr. Palacios claim that the policy amendment was delivered to John Geter III and Ms. Gilbert on September 26, 2011 and signed by both of them in the presence of Mr. Palacios. Ex. A-6. Ms. Gilbert also executed an application for life insurance from Monumental Life Insurance Company on September 26, 2011. Ex. A-12, ECF No. 23. That application bears both Ms. Gilbert's signature as well as Mr. Sanphasiri's signature. *Id.* John Geter III's life insurance policy application was eventually approved by Liberty's underwriters. Scallorn Dep. Ex. 29; 30, ECF No. 29-2.

John Geter III passed away on November 28, 2012. Def.'s Stmt. Material Facts ¶ 28. His Certification of Death, issued on December 5, 2012, listed "Metastatic CNS Lymphoma" and "AIDS" as the cause of death. *Id.* at ¶ 29. On December 31, 2012, Liberty mailed Ms. Gilbert a letter confirming that John Geter III had life coverage under Policy 44430L and requesting additional information in order to process her claim on his life insurance policy. Ex. A-14, ECF No. 23. Liberty subsequently sent Ms. Gilbert another letter dated May 8, 2013 denying her claim: "After reviewing the medical records, we regret that we must deny benefits due to material [sic] misrepresentation on the application on the following questions: Question #28 … Had Liberty Bankers Life known of this medical history prior to the application date, we would have declined to issue this contract." Ex. A-21, ECF No. 23.

## II.   LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### III. ANALYSIS

Defendant Liberty makes the following arguments in support of its Motion for Summary Judgment: (1) Plaintiff's contention that the Amendment received by Liberty is a forgery constitutes a failure of condition such that the insurance contract was never formed; (2) Plaintiff's recovery is precluded by Fla. Stat. § 627.409; (3) any knowledge possessed by insurance agents is not imputable to Liberty; and (4) no insurance agent had any actual authority to modify or change the insurance application or to make any representations to Plaintiff upon which she could rely regarding answering Question 28. I will address Liberty's arguments in turn.

Liberty's first argument regarding Plaintiff's claim that the executed Amendment is a forgery is now moot as Plaintiff no longer contests the validity of the Amendment. Therefore, any argument regarding the failure of a condition to the formation of a contract

is no longer viable as neither party contests that John Geter III executed an application for life insurance with Liberty and subsequently executed an Amendment confirming that the answer to Question 28 is "no."

    Liberty's second argument concerns Fla. Stat. § 627.409, which provides:

> A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the [insurance] contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in loss.

The Florida Supreme Court has held that "where either an insurer would have altered the policy's terms had it known the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy." *Cont'l Assurance Co. v. Carroll*, 485 So. 2d 406, 409 (Fla. 1986). As long as the misstatement satisfies subsections (a) or (b) of the statute, it need not be made fraudulently or knowingly to void the policy. However, the Eleventh Circuit, in analyzing Fla. Stat. § 627.409, found that "an essential prerequisite to the application of Florida Statute section 627.409(1) is that the insured make an inaccurate statement in his application." *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359, 1362 (11th Cir. 1990).

    Defendant Liberty argues that the answers provided by John Geter III, and endorsed by his mother, Ms. Gilbert, on the insurance application contained misrepresentations and omissions with regard to Question 28. Liberty further contends that John Geter III and Ms. Gilbert reaffirmed these misrepresentations by signing and submitting the Amendment which confirmed that the answer to Question 28 was "no." However, the facts regarding what John Geter III and Ms. Gilbert initially represented regarding the answer to Question 28 are in dispute. Per Ms. Gilbert's factual recitation of the events that occurred on

5

September 17, 2011, she answered Question 28 "yes," to the best of her knowledge and belief, and Liberty's agents changed her answer to "no."  As such, the facts regarding whether "the insured ma[de] an inaccurate statement in his application" are in dispute. *Sands*, 912 F.2d at 1362.  This conclusion stands even when taking into account the subsequent Amendment executed by John Geter III and Ms. Gilbert confirming that the answer to Question 28 was "no."  The same Liberty agents who allegedly changed John Geter III's and Ms. Gilbert's "yes" to a "no" brought them an Amendment confirming that the answer to Question 28 was in fact "no."  Their affirmation of the "no" answer does not indisputably qualify as a "misstatement" that warrants a grant of summary judgment in Liberty's favor.

Liberty next argues that any knowledge possessed by its insurance agents is not imputable to Liberty and that Liberty is not bound by its agents' actions in waiving provisions of the insurance contract.  In support of its argument, Liberty relies upon the Eleventh Circuit's reasoning in *Joseph v. Zurich Life Ins. Co. of America*.  There, the court affirmed a grant of summary judgment in favor of a life insurance company after finding both that the plaintiff misrepresented and omitted pertinent details regarding his medical history and that the statements he made to a nurse paramedic after the fact regarding his health were not imputable to the insurer.  *See Joseph v. Zurich Life Ins. Co. of* America, 159 F. App'x 114 (11th Cir. 2005).  More specifically, the plaintiff argued that because he later provided material medical information to the insurance company's nurse paramedic, and the nurse was the insurance company's "agent," the insurance company should have considered the information disclosed.  *Id.* at 117.  However, after reviewing the parties' insurance agreement, the court found that the "provisions in [plaintiff's] application unambiguously preclude anyone, which includes the nurse paramedic, from changing the information in [plaintiff's] application or accepting additional information not already in the application."  *Id.* at 118.

The facts of this case differ in many critical respects from the facts in *Joseph*, thus necessitating a different outcome.  Here, Ms. Gilbert alleges that she fully disclosed John Geter III's health history and that Mr. Christopher, Liberty's agent, instructed Mr. Sanphasiri, also Liberty's agent, to change the "yes" to a "no."  Unlike the plaintiff in *Joseph*, she fully disclosed material medical information when completing the application,

6

making the facts of this case more similar to the facts of *Zawilski v. Golden Rule Ins. Co.*, 2011 WL 3359658 (M.D. Fla. Aug. 4, 2011).  There the district court denied an insurance company's motion for summary judgment, in part because the plaintiffs were completely honest about their medical history.  When the plaintiffs attempted to disclose Mr. Zawilski's heart problems, the insurance agent put his fingers over his ears to emphasize that he did not want to hear any negative medical information.  *Id.* at *1.  Both Ms. Gilbert and the plaintiffs in *Zawilski* honestly disclosed pertinent medical information, and their respective insurance agents chose to disregard or purposefully ignore such information.  As such, the case at hand is not so much about attempting to change information in an insurance application post hac, but instead about the scope of authority of Liberty's agents.

In *Almerico*, the Florida Supreme Court explained the difference between an insurance broker and an insurance agent.  *See Almerico v. RLI Ins. Co.*, 716 So. 2d 774 (Fla. 1998).  An insurance broker is a middleman between the insured and the insurer, "soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself."  *Id.* at 776.  An insurance agent is exclusively employed by, and has a continuous relationship with, a specific insurer.  *Id.*  While an insurance broker may serve in a dual capacity and act as an agent for both the insured and the insurer, an insurance agent is an agent of the insurer and not of the insured.  This distinction is important because acts of an agent are imputable to the insurer and acts of a broker are imputable to the insured.  *See Zawilski*, 2011 WL 3359658, at *4 (citing *Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1046 (Fla. 2008)).

Liberty argues that while the above analysis regarding insurance brokers and agents is correct, it misses the mark because even if the agents in question here are considered agents of Liberty and not brokers, they were independent and not captive; that is, they were licensed to sell coverage for several carriers.  However, in urging this Court to look beyond the distinction between broker and agent to the distinction between independent agent and captive agent, Liberty misapprehends the law and points to a false distinction.  The caselaw Liberty cites to uses the terms agent and broker interchangeably and modifies them with either "independent" or "captive" to signify whether the agent or broker acted on behalf of the insurer or on behalf of the insured.  *See, e.g. Steele v. Jackson Nat'l Life Ins. Co.*, 691 So. 2d

525, 527 (Fla. Dist. Ct. App. 1997). The distinction drawn between independent and captive in *Steele* is the same as the distinction *Almerico* draws between agents and brokers.

As such, under Florida law, "civil liability may be imposed upon insurers who cloak unaffiliated insurance agents with sufficient indicia of agency to induce a reasonable person to conclude that there is an actual agency relationship." *Almerico*, 716 So. 2d at 783 (interpreting Fla. Stat. § 626.342). Evidence of indicia of agency may be demonstrated where an insurer furnishes an agent with "any blank forms, applications, stationary, or other supplies soliciting, negotiating, or effecting insurance." *Id.* at 777 (citing Fla. Stat. § 626.342(1)). If sufficient indicia of agency exists and the insurer subsequently accepts business from that broker, then an insurance broker may become the statutory agent of the insurer. *Id.* at 781. However, even if indicia of agency exists, and the insurer subsequently accepts business from the broker, liability will not attach to the insurer if the "insured knew or was put on notice of inquiry as to limitations on the agent's actual authority." *Id.*

After considering the factual record, I find that a genuine issue of material fact exists as to whether Mr. Sanphasiri, Mr. Christopher, and Mr. Palacios acted in a dual capacity as a broker for Ms. Gilbert and her son and an agent for Liberty. Here, Ms. Gilbert has presented enough evidence indicating that Liberty may have cloaked Mr. Sanphasiri, Mr. Christopher, and Mr. Palacios with enough indicia of agency to lead her to believe that they was Liberty's agents by providing them with blank insurance application forms and using them as Liberty's primary means of communicating with Ms. Gilbert. For example, when Liberty determined that an amendment to the original application was necessary, they sent Mr. Sanphasiri and Mr. Palacios back to Ms. Gilbert's home to have her execute the Amendment instead of mailing it to her or having another agent deliver her the Amendment. It would be reasonable for her to believe, from that interaction, that Mr. Sanphasiri and Mr. Palacios were Liberty's agents. Liberty's arguments regarding Ms. Gilbert's notice of Mr. Sanphasiri's limited authority, which Liberty argues was obviated by his sale of another policy of insurance to Ms. Gilbert through a different insurance company on the same day he brought her the Amendment to sign, is unavailing. Mr. Sanphasiri, along with Mr. Christopher and Mr. Palacios, entered Ms. Gilbert's home, established a relationship of trust with her, and sold her multiple policies of insurance for herself and her children. It would not be unreasonable for her to believe that they were Liberty's agents and

8

that they had the authority to oversee and change any answers she provided on her application for insurance.

## IV.   CONCLUSION

As such, for the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**.

**DONE and ORDERED** in Chambers, at Miami, Florida, this 19th day of April 2016.

*[signature]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*